UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARK QUILES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:23-cv-03383-GCS |
| | ) |
| JAKOB UPTON, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Plaintiff Mark Quiles, an inmate with the Illinois Department of Corrections ("IDOC"), who is currently incarcerated at Menard Correctional Center ("Menard"), brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. His original Complaint, which alleged excessive force by officers responding to an attempt to hang himself, was dismissed for failure to state a claim. (Doc. 9). Plaintiff was granted leave to amend his pleading. On April 5, 2024, Plaintiff filed his Amended Complaint. (Doc. 13). Plaintiff alleges that Defendant Jakob Upton used excessive force in violation of the Eighth Amendment when responding to his attempted self-hanging.

On June 12, 2024, the Court conducted a review of the Amended Complaint pursuant to 28 U.S.C. § 1915A and allowed Plaintiff to proceed on an Eighth Amendment claim against Defendant Upton for excessive force. (Doc. 15).

Pending before the Court is a motion for summary judgment on the issue of exhaustion of administrative remedies filed by Defendant Upton. (Doc. 40). Defendant Upton argues that Plaintiff failed to exhaust his administrative remedies because he failed to pursue his allegations through the prison's grievance process prior to filing this lawsuit. Plaintiff filed an opposition to the motion. (Doc. 57). Plaintiff counters that his attempt to exhaust were thwarted by the prison.

On May 21, 2025, the Court held a hearing on the motion, heard testimony from Grievance Officer Jeffrey Olson and Plaintiff, and took the matter under advisement. (Doc. 60). Based on the following, the Court **GRANTS** the motion.

## FACTS[1]

The parties agree that grievances # 324-4-23-MEN and # 76-5-23-MEN are the relevant grievances to the issue in this case.

On April 24, 2023, Plaintiff filed emergency grievance # 324-4-23-MEN, which was sent to the Warden/Chief Administrative Officer ("CAO") for review. The Warden/CAO, however, deemed it non-emergent. Thereafter, on April 26, 2023, the grievance was sent back to Plaintiff for refiling. (Doc. 40-2).

---

[1] The record reflects that Plaintiff, during his incarceration, filed many grievances. However, the ARB has only received two: (1) 2023 regrading mental health issues and (2) 2024 regarding dietary issues. These grievances are not relevant to the exhaustion issue before the Court.

On April 25, 2023, Plaintiff submitted grievance # 76-5-23-MEN, concerning the allegations relating to excessive force. (Doc. 40-3, p. 1-4). Plaintiff presents similar excessive force allegations to those contained in his amended complaint, grieving about an incident which occurred on March 14, 2023. However, Defendant Upton's name does not appear in the grievance. *Id*. The correctional officers that Plaintiff alleges used excessive force are all unnamed in the grievance. This grievance was submitted for second review level review on May 22, 2023. *Id*. at p. 1. On December 20, 2023, the Grievance Officer recommended denying the grievance, and the CAO concurred with the recommendation on December 21, 2023. *Id*. Plaintiff testified that he mailed the grievance to the Administrative Review Board ("ARB") in December 2023, after the grievance was returned to him. The record does not reveal that this grievance was submitted to the ARB.

Plaintiff filed suit on October 13, 2023. (Doc. 1). He filed his Amended Complaint on April 5, 2024. (Doc. 13).

## LEGAL STANDARDS

"Summary Judgment is proper if the pleadings, discovery materials, disclosures and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983

of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g.*, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006) (noting that "[t]his circuit has taken a strict compliance approach to exhaustion."). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). A plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following procedures:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

As an inmate confined within the Illinois Department of Corrections, Plaintiff was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE § 504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint[,] or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final

determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

The grievance procedures allow for an inmate to file an emergency grievance. To file an emergency grievance, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender" and thus the grievance should be handled on an emergency basis. 20 ILL. ADMIN. CODE § 504.840(a). If the CAO determines the grievance should be handled on an emergency basis, then the CAO "shall expedite processing of the grievance and respond to the offender" indicating to him what action shall be taken. 20 ILL. ADMIN. CODE § 504.840(b). If the CAO determines the grievances "should not be handled on an emergency basis, the offender shall be notified in writing that he or she may resubmit the grievance as non-emergent, in accordance with the standard grievance process." 20 ILL. ADMIN. CODE § 504.840(c). When an inmate appeals a grievance deemed by the CAO to be an emergency, "the Administrative Review Board shall expedite processing of the grievance." 20 ILL. ADMIN. CODE § 504.850(f).

### DISCUSSION

Defendant asserts that Plaintiff failed to exhaust administrative remedies because he filed suit before he completed the exhaustion process. Specifically, Defendant argues that while the record reflects that Plaintiff initiated the grievance process regarding the

allegations in this case, Plaintiff did not wait to complete the facility and ARB reviews before filing this case. Plaintiff counters that he did his part to exhaust his administrative remedies based on the inadequate grievance process at the facility. The Court agrees with Defendant.

Plaintiff cannot sue first and exhaust later. And that is precisely what Plaintiff did here. Plaintiff's allegations against Defendant Upton occurred on March 14, 2023, he submitted the grievance regarding these allegations on or about April 25, 2023, with grievance # 76-5-23 MEN.[2] The grievance officer recommended the denial of the grievance on December 20, 2023. (Doc. 40-3, Exh. C, p. 1). The CAO concurred with the grievance officer on December 21, 2023. *Id.* Plaintiff testified that he sent the appeal to the ARB after he received it, but it was never received. He also testified and argued that there were mail delivery problems at the facility and that is why the ARB never received the appeal. Plaintiff supported this allegation by referencing other grievances he had filed regarding this issue. Even when taking this as true, however, Plaintiff filed this lawsuit

---

[2]    During the hearing, Plaintiff testified that the only grievances he submitted regarding the claims in this case were this grievance (# 76-5-23 MEN) and a prior grievance that was returned to Plaintiff as being non-emergent. This appears to be grievance # 324-4-23 MEN, which was received by the grievance office on April 24, 2023. (Doc. 40-2, Exh. B, p. 1). This grievance was returned to the Plaintiff as non-emergent to be refiled in accordance with the regular grievance process. Plaintiff testified that he resubmitted the returned grievance and that it was the same as the one in question (# 76-5-23). While there was some testimony as to under what circumstances a resubmitted grievance would be given the same or a different number, Plaintiff testified that grievance # 76-5-23 was essentially the same as the previously submitted grievance with at best minor differences. As such, the Court considers # 76-5-23 as the only relevant grievance for purposes of exhaustion.

on October 13, 2023. This was a period of less than six months after the incident in question and more than two months prior to Plaintiff receiving a response from the grievance officer and CAO. Additionally, there is no evidence that *at the time* of the filing of the lawsuit (October 13, 2023), the facility was ignoring Plaintiff's claims in the grievance. In fact, the record and testimony at the hearing show that other grievances filed by Plaintiff were answered accordingly. And some of those grievances involved requests related to the relief requested in # 76-5-23 regarding mental health treatment. Furthermore, the eight-month period between the incident and the completion of the facility level grievance process does not appear to be unreasonable given the nature of the allegations and the fact that Plaintiff did not name and/or describe any of the alleged perpetrators. While there appears to have been a problem with Plaintiff's appeal of # 76-5-23 reaching the ARB, this problem does not explain, nor does it justify prematurely filing a lawsuit prior to the completion of the facility review. Accordingly, this case is dismissed without prejudice for failure to exhaust administrative remedies. *See, e.g.*, *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020) (stating that "[a] premature lawsuit must be dismissed without prejudice, and the prisoner must file a new suit fully exhausting administrative remedies."). Plaintiff may refile this lawsuit.

## CONCLUSION

For the reasons delineated above, the Court **GRANTS** Defendant's motion for summary judgment on the issue of administrative remedies. (Doc. 40). The Court

**DISMISSES without prejudice** Plaintiff's amended complaint for failure to exhaust administrative remedies. The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and to close the case.

**IT IS SO ORDERED.**

**DATED: June 4, 2025.**

Digitally signed by Judge Sison
Date: 2025.06.04
14:56:30 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**